UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY A. ROSS

          Plaintiff,          Case No: 14-14324
v.                                        Hon. Victoria A. Roberts

BAYLOFF STAMPED PRODUCTS
DETROIT, INC.,

          Defendant.
_____/

**ORDER DENYING:**

1. **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 29];**
2. **PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 32]**

## I. Introduction

Plaintiff Jeffrey A. Ross ("Ross") says his employer, Defendant Bayloff Stamped Products ("Bayloff"), an automotive supplier, fired him because of time he needed off to treat his cancer. Ross' First Amended Complaint sets forth three counts for violations of: the Family Medical Leave Act ("FMLA"); the Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"); and, the Americans with Disabilities Act ("ADA").

Both parties filed Motions for Summary Judgment on all claims. The Motions are fully briefed; they are **DENIED**.

## II. Background

Ross worked as the Operations Manager for Bayloff from January 2012 until September 8, 2014. As Operations Manager, Ross was responsible for all three plant locations and reported to General Managers Christopher and Brian Bayer.

Ross took two weeks off in January 2014 for hernia surgery. During surgery, Ross' doctor found a tumor. On March 5, 2014, Ross informed Bayloff's Human Resource Manager, Laura Mullin ("Mullin"), his treatment plan included surgery, radiation and possibly chemotherapy. On April 15, 2014, Ross had a second surgery to remove the tumor. Bayloff provided Ross with time off but did not give him FMLA paperwork. Bayloff allowed Ross to modify his schedule in June, July and August 2014 to accommodate his radiation treatments.

In the spring of 2014, Bayloff hired the DWH Consulting firm to assess the business because it was struggling. Bayloff says one of the recommendations made by the consulting firm included structural changes to management.

In mid-August, Ross learned that he would need to start chemotherapy. The parties dispute whether Ross properly informed Bayloff regarding his need for leave. Bayloff says Ross did not because although he told Christopher Bayer about his upcoming chemotherapy treatments, he did not explicitly tell him that he needed leave under the FMLA or indicate whether he would definitely need time off. (The parties do not dispute that Mullin knew about the chemotherapy and that it would require time off).

Ross requested two vacation days (not related to medical treatment) in August to visit with out of town family. This request was initially denied, but Brian Bayer later approved Ross' modified request to take a half day off instead.

On August 26, 2014, Mullin provided Ross with FMLA paperwork for the first time and approved intermittent FMLA leave for purposes of treatment. On August 28th, the Bayers met with Ross and told him they were making a leadership change based on DWH's recommendations. They told Ross he could either: (1) resign his position

2

immediately and receive pay through September and COBRA benefits until the end of 2014; or (2) take a lesser role with the company until the end of 2014, at the same compensation, at which point his employment would terminate.  Bayloff says if Ross elected option (2), he would be required to work all Saturdays production was running.  Brian told Ross he could take Friday off to think about it, and let him know after Labor Day.

The parties dispute why Ross was given these two options.  Bayloff says, based on DWH's recommendations, the Bayers decided to make changes to save the company. Ross says it is because his treatment required additional time off which Bayloff did not want to give him. Ross agrees that DWH recommended management changes but disputes that DWH thought Ross should go.  In support, Ross relies on deposition testimony by DWH saying it did not recommend Ross' termination; DWH included Ross on a proposed organizational chart and recommended that he run one of the plants.

On Monday (Labor Day) night, Brian sent Ross a text asking if he had made a decision.  Ross responded "I need to work, but I have some questions."  ECF No. 29 at 199.  Brian responded, ". . . okay, glad to hear it."  *Id.*

Ross reported to work after Labor Day and met with the Bayers.  Ross says he questioned the Bayers about his new duties and the reporting structure.  The Bayers said they would "get something written up" on Ross' new responsibilities and severance.  ECF No. 32 at 418.  According to Brian Bayer, Bayloff was compiling a "separation agreement" but it was never executed or provided to Ross.  ECF No. 32 at 489.  Ross never clearly said whether he planned to accept option 1 or 2.  According to Ross, he

was waiting to see something in writing before making that decision. Bayloff says Ross elected to take the second option, a lesser role with the company, because he continued to come into work and did not say he was leaving.

Ross did not come into work the following Saturday. Ross gave conflicting deposition testimony on whether or not he intended to come into work. ECF No. 32 at 449 and 451. At first, Ross testified that he "intended" to go into work for ". . . four hours or so. . ." *Id.* at 449. Later in the deposition, Ross testified that he probably would not have gone into work even if he had child care, because it was not "common practice" for him to work Saturdays and if work did need to be done on the weekend, he often did it from home. *Id.* at 451.

On Monday, September 8, 2014, Brian asked Ross why he didn't work Saturday. Ross said he had child care issues and didn't come in. Later that day, the Bayers terminated Ross for failing to report to work.

### III.    Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then

shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing FED. R. CIV. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## IV.   Discussion

### A.   FMLA

Under the FMLA, an eligible employee is entitled to leave if a serious health condition renders the employee unable to perform the functions of their job. 29 U.S.C. §2612(a) and (a)(1)(D). The term "serious health condition" is defined as an "illness, injury, impairment, or physical or mental condition that involves either: (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C § 2611(11). There are two distinct theories for recovery under the FMLA; Ross pleads both.

#### 1.   FMLA Retaliation

The Court concludes neither party is entitled to summary judgment on Ross' FMLA retaliation claim. Under a "retaliation" or "discrimination" theory "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

The Court applies the *McDonnell Douglas* burden-shifting framework to FMLA retaliation suits. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012). As the

plaintiff, Ross bears the initial burden to demonstrate the *prima facie* elements of his claim. If he can, this creates a rebuttable presumption of retaliation and the burden shifts to Bayloff to articulate a legitimate non-retaliatory reason for the adverse employment action. Only if Bayloff meets this obligation does the burden shift back to Ross to prove that the proffered reason is actually just a pretext to hide unlawful retaliation.

To establish a *prima facie* case of FMLA retaliation, Ross must show that (1) he was engaged in an activity protected by the FMLA; (2) Bayloff knew he was exercising his rights under the FMLA; (3) after learning of Ross' exercise of FMLA rights, Bayloff took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Arban*, 345 F.3d 390, 404; *Donald v. Sybra, Inc.*, 667 F.3d at 761.

Ross engaged in protected activity by notifying Bayloff that he needed time off for treatment. Bayloff knew Ross was exercising his right to take FMLA leave. On August 28 and September 6, 2014, Ross experienced an adverse employment action.

There is a causal connection between Ross' exercise of his rights and his termination; only two days separated notice from Ross and the adverse action. The proximity in time between the protected activity and the adverse employment action may constitute sufficient evidence of a causal connection if it is so acutely near in time that the proximity is deemed indirect evidence that permits an inference of retaliation. See, *Woida v. Genesys Reg'l Med. Ctr.*, 4 F. Supp. 3d 880, 899 (E.D. Mich. 2014).

Once the employee provides sufficient evidence for a *prima facie* case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory

reason for its actions. *Donald v. Sybra, Inc.*, 667 F.3d at 762.

Bayloff provides two legitimate non-retaliatory reasons for Ross' termination. Although the parties dispute whether the August 28, 2014 decision was effectively a termination, Bayloff says the August 28, 2014 decision that Ross could not continue working beyond 2014 was made based on the DWH's recommendation and was not because Ross needed time off. According to Bayloff, Ross was terminated solely because he failed to come to work on Saturday, September 6, 2014.

At the final stage of the *McDonnell Douglas* analysis, the burden of production requires Ross to prove Bayloff's proffered reasons for its adverse actions against him were, in fact, pretext for retaliation. *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 535 (6th Cir. 2011) (unpublished). To raise a genuine issue of fact as to pretext and defeat a summary judgment motion, Ross must show: "(1) the proffered reason had no factual basis, (2) the proffered reason did not actually motivate Defendants' action, or (3) the proffered reason was insufficient to motivate the action." *Id.* (citing *Adair*, 452 F.3d at 491).

Ross sufficiently raises a genuine issue of fact; he presents evidence of temporal proximity between the adverse decision and the date he notified the company. Additionally, Ross provided evidence that Bayloff's reasons lack a basis in fact. In support, Ross provided evidence the August 28th decision to reduce Ross' responsibilities and let him go based on the DWH recommendation lacks a basis in fact. The consultants testified that they did not recommend Ross' termination. Instead, they recommended Ross stay on with Bayloff and manage Plant 1 operations.

". . . [S]uspicious timing is a strong indicator of pretext when accompanied by

some other, independent evidence." *DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 393 (6th Cir. 2005) (unpublished).

The Court finds that the combination of evidence presented by Ross is sufficient to meet his burden to show there is a genuine issue of material fact as to whether Bayloff's reasons for presenting Ross with two options on August 28th was improper.

Ross has also provided evidence that the proffered reason for his termination on September 6th was insufficient motivation. Ross says it is not Bayloff's policy to terminate employees for failing to come into work and references Bayloff's attendance policy. Under the policy, if an employee fails to show up for a shift and fails to call in, the employee is penalized by having a certain amount of time recorded as unplanned time off.

Deviation from company policy can be evidence of possible pretext. *Felder v. Nortel Networks Corp.*, 187 F. App'x 586, 595 (6th Cir. 2006). However, the evidence is strongest when it is shown the company applied the same standard differently to people in different race, age or gender groups; Ross provided no evidence that this policy was regularly applied to others.

While Bayloff argues that working Saturdays became part of Ross' responsibilities going forward, Ross disputes that he even accepted that option and was instead continuing his prior role while waiting for more information. Given these disputed issues of fact, summary judgment is inappropriate.

### 2. FMLA Interference

Under the "entitlement" or "interference" theory, it is ". . . unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise,

any right provided in this subchapter." 29 U.S.C. § 2615(a)(1); *Arban v. W. Pub. Corp.*, 345 F.3d 390, 400-01 (6th Cir. 2003).

To establish an FMLA interference claim, Ross must demonstrate that: (1) he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave his employer notice of his intention to take leave; and (5) the employer denied him FMLA benefits to which he was entitled. *Killian v. Yorozu Auto. Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).

The *McDonnell Douglas* burden-shifting framework also applies to FMLA interference claims. *Donald v. Sybra, Inc.*, 667 F.3d at 762. See also, *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014).

The parties only dispute the fourth and fifth elements; that Ross gave Bayloff notice of his intention to take leave and Bayloff denied him leave to which he was entitled. Bayloff says Ross did not provide notice of his intent to take leave, failed to comply with Bayloff's internal procedure for taking leave, and did not provide Bayloff with the proper medical certification.

The Court finds there is no disputed issue of fact concerning Ross' notice. If leave is foreseeable, an employee must provide the employer with at least thirty days notice. 29 C.F.R. §825.302. If leave is unforeseeable, the employee must provide notice to the employer "as soon as practicable." *Id.* An employee does not have to specifically mention the FMLA when taking leave. *Arban v. W. Pub. Corp.*, 345 F.3d 390, 400 (6th Cir. 2003). "[T]he critical test for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate

9

to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job." *Barrett v. Detroit Heading, LLC*, 311 F. App'x 779, 791 (6th Cir. 2009) (citations omitted).

In mid-August, Ross learned that he had to start chemotherapy and says he told Mullin that he would start treatment in September. At the time, the treatment plan was not finalized and Ross did not know exact dates. On August 26, 2014, Mullin gave Ross FMLA paperwork for the first time and approved intermittent FMLA leave for purposes of treatment. Ross says he told the Bayers about the treatments on either August 26 or August 27, 2014. ECF No. 32 at 444. The information Ross provided to Mullin was timely and sufficiently detailed.

Once an employee states leave is needed, the burden shifts to the employer to inquire further if it lacks sufficient information about the employee's reasons for requesting leave. *Miller v. GB Sales & Serv., Inc.*, 275 F. Supp. 2d 823, 829 (E.D. Mich. 2003). Bayloff had enough information to reasonably conclude that Ross had a serious health condition requiring leave. Additionally, Mullin and the Bayers were aware that Ross had cancer and that he may have to undergo chemotherapy.

Bayloff's argument that Ross failed to provide proper certification is without merit. Generally, an employer should request certification at the time the employee gives notice of the need for leave, but in the case of unforeseen leave, within five business days after the leave commences. 29 C.F.R. § 825.305. An employee has fifteen days to provide certification after it has been requested. *Id.* When Ross suffered an adverse action on August 28, 2014, he had not yet taken leave. Additionally, the last day of Ross' employment was September 8, 2014, only thirteen days after Ross received

paperwork from Mullin.

Bayloff argues Ross failed to comply with Bayloff's internal procedure for taking leave. Bayloff's employee manual sets forth procedure for requesting FMLA leave:

> B. <u>ADVANCE NOTICE AND MEDICAL CERTIFICATION</u>
>
> The employee is required to provide thirty (30) days advance notice and medical certification if the leave is "foreseeable." If the leave is "unforeseeable", [sic] notice must be provided as soon as practicable. Taking of leave may be denied if requirements are not met. All notices of leave are to be directed to the Human Resources Manager with a copy to the employee's supervisor. The Human Resources Manager will notify the employee detailing the expectations and details surrounding the leave for both the employee and Bayloff Stamped Products Detroit/R.E.B. Tool Company.

Bayloff says Ross failed to give notice to the Bayers. Bayloff concedes Ross told Chris Bayer about the chemotherapy treatments but says he did not then specify whether he needed time off or if his work would be affected.

Bayloff is not entitled to summary judgment on this ground. If any employee does not comply with an internal procedure for taking leave, the employer may deny or delay leave. 29 C.F.R. § 825.302(d). Ross met his notice requirement even if he did not do so in writing to Mullin with a copy to the Bayers.

Although the Court finds Ross establishes a *prima facie* case of interference, this does not mean that he will necessarily be able to recover. The right of non-interference with medical leave is not absolute and an employee who requests FMLA leave has no greater protection against termination if it is unrelated to the FMLA request. *Arban*, 345 F.3d at 401. "An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Id.*

11

As discussed above, Bayloff provided a legitimate reason for terminating Ross' employment and Ross proffered evidence that his failure to come into work on Saturday was insufficient to warrant termination. Neither party is entitled to summary judgment on the FMLA interference claim. There is a genuine issue of material fact as to whether Ross was terminated for an improper reason.

### B.     PWDCRA and ADA

Under the ADA, a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  A plaintiff may seek to establish a prima facie case of discrimination by either direct or circumstantial evidence. *Ferrari v. Ford Motor Co.*, No. 15-1479, 2016 WL 3443646, at *3 (6th Cir. June 23, 2016).

To establish discrimination with direct evidence, the plaintiff may introduce ". . . direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision." *Id.*  Distinguishing between cases that involve proof by direct evidence or indirect evidence is important because the framework of analysis is different. *Id.* at *4.  In cases involving indirect evidence, the Court employs the *McDonnell Douglas* burden shifting approach, but not in cases that involve direct evidence because the employer acknowledges it relied on the handicap in making the employment decision. *Id.*  Thus, in a direct evidence case, intent has already been admitted by the defendant. *Id.*

The only support Ross provides of direct evidence is a statement by Brian Bayer.

12

Ross had a conversation with Brian Bayer in mid-August, 2014 during which Ross requested two vacation days. Ross says the request was denied and he was told ". . . that the family had worked with me, they felt like they had worked with me through this whole situation, and that they didn't feel that I needed to take anymore time off." ECF No. 32 at 430 and 452. When Brian Bayer denied the request, Ross says he came into his office and said the family had worked with him enough and that it is: " . . . not in the best interest for [Ross] to be out of the plant." ECF No. 32 at 430, n. 9 and 452.

The Court finds that Ross cannot establish a *prima facie* case by direct evidence based on this statement alone; it does not directly show Bayloff relied on Ross' disability in making its employment decision.

But that does not end the inquiry; there is a genuine issue of material fact as to whether Ross' termination was based on unlawful discrimination.

To make out a *prima facie* case of employment discrimination by indirect evidence under Title I of the ADA, Ross must show: (1) he is an individual with a disability; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment action; (4) the employer knew or had reason to know of his disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011). The PWDCRA "substantially mirrors" the ADA and resolution of a plaintiff's ADA claim generally, but not always, resolves the PWDCRA claim. *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012).

Ross says he was disabled within the meaning of the ADA and PWDCRA; he was qualified for his position and could perform the functions of his position with or

13

without time off for chemotherapy; he suffered an adverse action; Bayloff knew Ross had a disability; Ross' position remained open for five months and Bayloff ultimately hired Scott and Jim Maly; they assumed the majority of Ross' responsibilities. A *prima facie* case is established.

And, contrary to Bayloff's argument, there is ample evidence that Ross requested time off as an accommodation.

Additionally, Bayloff is not entitled to summary judgment because, for the same reasons discussed above, Ross met his burden to show there is a genuine issue of fact as to whether Bayloff's explanation for its adverse employment action was disingenuous. To survive a motion for summary judgment, Ross does not need to definitively prove Bayloff's reason is pretextual, he must only ". . . prove enough to create a *genuine issue* as to whether the rationale is pretextual." *Ferrari*, 2016 WL 3443646, at *7 (emphasis in original).

## V.  Conclusion

Both Motions for Summary Judgment are **DENIED**.

S/Victoria A. Roberts
United States District Judge

Dated: 7/13/2016